UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY BILLINGS,

                Plaintiff,                              Case Number 23-12311

v.                                                                 Honorable David M. Lawson

THE IDEAL GROUP, INC.,

                Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DISMISSING FEDERAL CLAIMS WITH PREJUDICE, AND DISMISSING STATE CLAIMS WITHOUT PREJUDICE**

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race and gender (among other personal characteristics), and it authorizes aggrieved persons to bring lawsuits to enforce its terms. *See* 42 U.S.C. § 2000e–2(a)(1). The Age Discrimination in Employment Act (ADEA) provides similar protection against age discrimination. *See* 29 U.S.C. § 623. A lawsuit, however, is not Congress's preferred first resort for the enforcement of Title VII and ADEA rights. Instead, Congress chose "[c]ooperation and voluntary compliance . . . as the preferred means" for eradicating workplace discrimination. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974). A person seeking to enforce her rights under Title VII or the ADEA must first turn to the Equal Employment Opportunity Commission (EEOC) and follow its administrative rules to seek a remedy. By authorizing those rules prescribing the pre-suit process, Congress "established a procedure whereby . . . the [EEOC] would have an opportunity . . . to investigate individual charges of discrimination, to promote voluntary compliance with the requirements of Title VII" and the ADEA. *Ibid.*

Plaintiff Mary Billings, an African American woman over 40 years of age, was fired from her job in the human resources department at defendant The Ideal Group.  She believes her race and age played a role in her employer's decision.  However, Billings did not bring her complaint to the EEOC until the filing deadline had passed.  Consequently, the federal claims that she has alleged in her complaint in this Court must be dismissed.  She also has brought claims under state law, but the Court will decline to exercise supplemental jurisdiction over them.  The defendant has filed a motion styled alternatively as a challenge to subject matter jurisdiction and to the sufficiency of the complaint, and a motion for partial summary judgment, all based in part on the timeliness of the plaintiff's agency filings.  The issues presented are addressed adequately by the parties' briefing, and oral argument will not aid in the disposition of the motion.  The motion therefore will be decided on the papers submitted.  E.D. Mich. LR 7.1(f)(2).  Because the plaintiff did not comply with the agency filing deadline, the defendant's motion for partial summary judgment or to dismiss will be granted in part.

I.

The facts discussed below are taken from the complaint and the attachments to the motion papers.

Billings was hired by The Ideal Group in a human resources role on November 15, 2021.  The employment application that she signed contained a statement that contractually shortened the statute of limitations for certain employment-related claims that she might choose to bring.  The clause expressly did not apply to certain claims that would arise under federal law.

Based in Detroit, the defendant corporation is owned by an unnamed individual of Mexican descent and is managed by Amanda Kowalski, who is white.  Despite her previous experience in human resources, Billings says that her supervisors assigned her tasks equivalent to those of an

administrative assistant, and Kowalski refused to allow Billings to perform any human resources tasks or to maintain any HR files in her office. The Ideal Group also restricted Billings's annual salary by $5,000 until she had been employed for 90 days.

On December 25, 2021, Billings became ill with COVID-19 and had to go to the emergency room. The defendant told her that she could not work remotely or return to the office until she tested negative. After recovering, Kowalski told Billings that she had had to work extra hours to cover for her, and Billings began to notice that the defendant's managerial staff were not speaking to her and were excluding her from communications. She also realized that 80 hours of her vacation time had been applied to cover the time she was out with COVID, which she found unusual because other employees were allowed to work from home when they were sick without being required to use their vacation time. Billings raised the issue with Jesse and Linzie Vanegas, the son and daughter of the defendant's unnamed owner. Linzie, whose role with the company is unspecified, restored the missing vacation hours but also convened an "Operation Restart" meeting to discuss the plaintiff's job. During the meeting, Billings was informed that Kowalski would remain in charge of payroll and benefits responsibilities, and Billings would be assigned other duties. Billings's new tasks included travel to Howell, Michigan, which was not mentioned in her original job description. Billings's period of reduced pay also was an extended an additional ten days.

Shortly thereafter, Billings alleges, she began experiencing retaliation in the office. For instance, Kowalski ignored her and complained about her to Linzie for minor issues. Kowalski also caused the defendant's owners to suspect that Billings had created a fake payroll profile in order to swindle money from the company. Billings also alleges that Linzie began harassing her. When Billings informed Linzie that she felt harassed, Linzie avoided her. Jesse then called her

into a random meeting, where he "kept looking and laughing at text messages" and commented about bringing mace to work. The mace comment made Billings suspicious that someone had been going through her purse because she kept a small container of mace on her keychain. Nevertheless, Billings states that the harassment began to slow and that conditions in the office were improving.

It was not to last. Although Billings' probationary period was set to end on February 15, 2022, on February 9, Kowalski implemented daily check-ins to discuss her work progress. Billings questioned that practice, noting that she had not had any real tasks since the "Operation Restart" meeting.

At the end of the day, Kowalski asked Billings to come to her office. Linzie and two other individuals were outside. One was petting a large dog, which made Billings fearful. Kowalski informed Billings that she was being fired due to her poor work performance and insubordination. Billings alleges she was replaced by the wife of Linzie's father's best friend, who is being paid without the 90-day salary restriction and has access to bonuses and a car allowance. This individual's race and age are not specified.

Billings filed a charge with the Equal Employment Opportunity Commission on December 15, 2022, about ten months after she was fired. She alleged that her supervisors treated her differently from her peers, that her duties were stripped from her, and that she was "constantly harassed, ridiculed and monitored." ECF No. 7-2, PageID.52. On March 22, 2023, the EEOC issued a letter dismissing the charge because it was not filed within the applicable limitations period. On April 27, 2023, however, the EEOC removed the Closure Notice from Billings' EEOC charge, and on June 13, 2023, it issued her a new right to sue letter.

Billings filed her complaint in this case on September 11, 2023. She brings seven claims, numbered as Counts II through VIII. There is no Count I. The actual counts are styled as retaliation in violation of the Elliott-Larsen Civil Rights Act (ELCRA) (Count II); Title VII race discrimination (Count III); race discrimination in violation of ELCRA (Count IV); maintaining a hostile work environment in violation of Title VII (Count V) and ELCRA (Count VI); age discrimination and harassment in violation of the ADEA (Count VII); and harassment and discrimination on the basis of age in violation of ELCRA (Count VIII).

II.

The defendant filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and for partial summary judgment under Rule 56. It argues that the plaintiff's federal claims are time-barred and must be dismissed because she filed her charge with the EEOC more than 300 days after her termination and that the plaintiff has not exhausted her claims at the EEOC level because she did not specify sufficient details in her EEOC charge regarding a hostile work environment or retaliation complaint. The defendant also argues that the plaintiff's state law claims also are time-barred because her employment application included a provision limiting her right to file employment related lawsuits to six months after the alleged adverse employment action.

The defendant relies on a variety of procedural rules to bring the timeliness issue before the Court. It cites Rule 12(b)(1), which is used to challenge subject matter jurisdiction. But that rule does not apply here because a challenge to a plaintiff's compliance with Title VII's and the ADEA's limitations periods is not jurisdictional. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 395 n.11 (1982).

The plaintiff also invokes Rule 12(b)(6), which is used to test the sufficiency of a pleading. Under that rule, the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). Beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

Generally, a motion under Rule 12(b)(6) "is an 'inappropriate vehicle' for dismissing a claim based upon a statute of limitations." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). "Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run, and [i]f the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Ibid.* (quotations omitted). It is only where "the allegations in the complaint affirmatively show that the claim is time-barred" that dismissal on that ground under Rule 12(b)(6) is permissible. *Cataldo*, 676 F.3d at 547.

Sometimes, courts will consider EEOC charge-of-discrimination forms as public records for this purpose. *See, e.g.*, *Brown v. RCO Eng'g*, No. 23-11371, 2024 WL 1019258, at *2 (E.D. Mich. Mar. 8, 2024) (citing *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862-63 (N.D.

Ohio 2013)). But here, the plaintiff's complaint does not even mention her EEOC filing. Rule 12(b)(6) will not help the defendant here.

The defendant argues in the alternative that it may raise the statute of limitations defense under Rule 56, the summary judgment rule. It has attached a copy of the EEOC charge to its motion papers, which establishes that the plaintiff signed and submitted the document to the EEOC on December 15, 2022. The Court may consider that document along with other evidence in the record to determine whether there is any "genuine dispute as to any material fact" on that issue, and if not, whether the defendant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Under Rule 56, the party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

A.

Both Title VII and the ADEA require an aggrieved person to exhaust her administrative remedies with the EEOC or relevant state agency before filing a lawsuit in court. *Jones v. Johnson*, 707 F. App'x 321, 328 (6th Cir. 2017) (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006)). Generally, for a Title VII case she must file her claim within 180 days

of the alleged discriminatory act. *EEOC v. Com. Off. Prods. Co.*, 486 U.S. 107, 110 (1988) (citing 42 U.S.C. § 2000e-5(e)). However, the filing period may be extended to 300 days in jurisdictions that have "State or local law prohibiting the practice alleged," 42 U.S.C. § 2000e-5(d), and "a State or local agency with authority to grant or seek relief from such practice," *id.* § 2000e-5(e)(1). Within such jurisdictions, like Michigan, known as "deferral jurisdictions," the 300-day limitation period applies as long as the employee has "instituted proceedings with [the applicable] State or local agency." *Ibid.*; 29 C.F.R. § 1601.13; *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 828 (6th Cir. 2019).

A potential plaintiff also must receive a Right to Sue letter from the EEOC. 42 U.S.C. § 2000e-5(e). A plaintiff then must file her lawsuit within 90 days after receiving that letter. *Id.* § 2000e-5(f)(1). The ADEA includes a similar limitations period, requiring complainants to file a charge with the EEOC "within 300 days after the alleged unlawful practice occurred," 29 U.S.C. § 626(d)(1)(B), and if the EEOC issues a right to sue letter, the suit must be commenced within 90 days, *id.* § 626(e). In general, these filing periods commence once "the plaintiff learns of the employment decision itself, not when plaintiff learns that the employment decision may have been discriminatorily motivated." *Amini v. Oberlin Coll.*, 259 F.3d 493, 499 (6th Cir. 2001).

The plaintiff's complaint indicates that she was terminated by the defendant on February 9, 2022. Compl. ¶¶ 29, 35. As stated above, the plaintiff signed and submitted the charge to the EEOC on December 15, 2022. ECF No. 7-2, PageID.52. The charge also confirms that the discriminatory activity concluded on February 9 of that year. *Ibid.* Calculating the time with reference to Federal Rule of Civil Procedure 6(a)(1) — excluding the day of the triggering event and including the last date of the period — December 15, 2022 was 309 days after the plaintiff's termination, exceeding by nine days the applicable 300-day deadline.

Somewhat remarkably, the plaintiff does not address this deficiency in her response. Instead, it appears that she believes that there is no timeliness problem because she filed her lawsuit within 90 days of receiving a right to sue letter from the EEOC. That fact, although true, confuses the issues. To maintain a lawsuit, a plaintiff is required *both* to file a timely charge with the EEOC *and* to file a lawsuit within 90 days of receiving the right to sue letter from the EEOC. Billings did not do the former. Generously construed, her argument might be an attempt to suggest that the EEOC's decision to recall its previous dismissal of her charge and issue a right to sue letter, *see* ECF Nos. 7-4 & 7-5, means that the EEOC determined her charge was timely filed. This argument is unavailing because "courts have generally made an independent review of the timeliness of the agency filing." *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1017 (1st Cir. 1979). And the undisputed record shows that the charge was filed beyond the 300-day benchmark. The charge was not timely.

It is true that the EEOC deadline is not jurisdictional, and it is subject to waiver, estoppel, and equitable tolling. *Zipes*, 455 U.S. at 393. And a delay of nine days past the filing deadline is not a substantial breach of the timeliness requirement. However, the plaintiff makes no request for equitable tolling, and courts generally do not raise the doctrine on their own. In any event, Billings likely could not advance a compelling argument to justify it. The plaintiff bears the burden of demonstrating an entitlement to tolling. *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003). The Supreme Court has emphasized that equitable tolling should be "applied sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). To determine if equitable tolling is appropriate, courts look to the factors outlined in *Truitt v. County of Wayne*, 148 F.3d 644 (6th Cir. 1998). Those factors include "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice

to the defendant; and 5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement." *Truitt*, 148 F.3d at 648.

The plaintiff has not addressed any of these factors, and the record does not suggest that they favor the plaintiff, save one. The only factor that conclusively favors her is the absence of prejudice to the defendant, as the nine-day delay is relatively insignificant. But a lack of prejudice "alone is not a sufficient basis for allowing equitable tolling relief." *Amini*, 259 F.3d at 501 (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)). The plaintiff has presented no facts demonstrating that she lacked notice of the filing requirement or exercised diligent efforts to pursue her rights between her termination and eventual decision to file a charge with the EEOC. There is little other reason to apply equitable tolling to the plaintiff's deadline to file a charge with the EEOC. *Compare Smith v. YUSA Corp.*, No. C-2-03-725, 2005 WL 1398490, *5 (S.D. Ohio June 14, 2005) (holding that a *pro se* plaintiff was not entitled to equitable tolling where he had 300 days to obtain legal representation and file an EEOC charge) *with Covert v. Cellco Partnership*, 563 F. Supp. 3d 767, 771-72 (M.D. Tenn. 2021) (holding that equitable tolling protected a *pro se* plaintiff who lacked notice of the filing deadline and had made efforts to contact the EEOC immediately after she was terminated).

Because the plaintiff did not file her charge with the EEOC within the 300-day deadline, she failed to exhaust her administrative remedies. *See Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351-52 (6th Cir. 2002). Her federal claims, therefore, cannot proceed. That is true "even though [she] appears to have nominally complied with the time limits for filing suit prescribed by § 1614.407(c), because [s]he did file [her] federal complaint '[w]ithin 90 days of the receipt of the Commission's final decision.'" *Hykes v. Lew*, No. 16-5509, 2017 WL 4863108, at *2 (6th Cir. Mar. 1, 2017) (quoting 29 C.F.R. § 1614.407(c)). The administrative procedures required by Title

VII and the ADEA are "threshold requirements that claimants must complete, or exhaust, before filing a lawsuit." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010). To hold that Billings's filing of her lawsuit "cure[d] the untimeliness of the original appeal . . . would allow a plaintiff to circumvent the administrative procedures set up by Congress." *Jenkins v. Potter*, 271 F. Supp. 2d 557, 563 (S.D.N.Y. 2003). Billings's federal claims must be dismissed.

B.

The defendant also argues that the plaintiff's state law claims are time-barred because she did not file them in court within the contractually-shortened period of limitations. But the defendant also argues that the Court should not exercise supplemental jurisdiction over them.

Federal courts have supplemental jurisdiction over state claims if they are "so related to" the federal claims over which the court has original jurisdiction "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). For purposes of this action, the Court has jurisdiction under 28 U.S.C. § 1331 over Billings' federal Title VII and ADEA claims. Billings's state claims under ELCRA are related to the federal claims because they arise from the same factual circumstances. Nonetheless, section 1367(c) confers discretion upon district courts to decline supplemental jurisdiction over state claims if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). In exercising this discretion, courts are to consider several factors, including whether declining jurisdiction would lead to wasteful proceedings due to the overlap between state and federal law, whether it would cause unfairness to a party, whether it would undermine federal-state comity, and whether a party has manipulated the case to reach the federal forum. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010). The Sixth Circuit has stated repeatedly, though, that "[i]f the federal claims are dismissed before trial, the

state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citations omitted).

In this case, it is true that the rules of decision for both federal and state discrimination claims overlap considerably. But two factors counsel in favor of dismissing the plaintiff's state law claims. First and foremost, the federal claims are dismissed early in the case, a factor the Sixth Circuit has said weighs in favor of declining jurisdiction over the associated state law claims. *Brooks*, 577 F.3d at 709. Second, considering the plaintiff's state law claims likely would involve at least one potentially novel issue of state law because the defendant contends that the plaintiff's state claims are time-barred based on a shortened limitations period included in her employment application. Although these contractually-altered limitations periods are presently permissible under Michigan law, the Michigan Supreme Court has shown some signs that it wishes to review that point of law. The Michigan Court of Appeals has held that parties permissibly may shorten the general statute of limitations for an action under ELCRA. *Timko v. Oakwood Custom Coating, Inc.*, 244 Mich. App. 234, 245, 625 N.W.2d 101, 107 (2001); *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 703 N.W. 2d 23, 31 (2005) ("[A]n unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy."); *see also Logan*, 939 F.3d at 832 n.5. However, this caselaw has come under attack. In a recent case, the Michigan Supreme Court requested briefing on whether *Timko* was correctly decided, although it ultimately declined to rule on the case on that basis, deciding instead that fact questions about the contract precluded summary judgment. *See McMillon v. City of Kalamazoo*, No. 162680, 983 N.W.2d 79, 80 n.1 (Mich. Jan. 11, 2023) (mem.). Dismissal without prejudice could provide the state courts the opportunity to address that question in the first instance.

III.

The plaintiff may not proceed on her federal discrimination claims because she did not exhaust her administrative remedies within the time provided by Congress. The Court declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

Accordingly, it is **ORDERED** that the defendant's motion construed as a motion for summary judgment (ECF No. 7) is **GRANTED IN PART**.

It is further **ORDERED** that Counts III, V, and VII of the complaint are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Counts II, IV, VI and VIII of the complaint are **DISMISSED WITHOUT PREJUDICE**.

                                                  s/David M. Lawson
                                                  DAVID M. LAWSON
                                                  United States District Judge

Dated:   May 3, 2024